SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

OCT - 3 2007

J.T. NOBLIN, CLERK

BY_____DEPUTY

### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION

RONNIE BRYANT AND PATRICIA BRYANT                          **PLAINTIFFS**

**VERSUS**                                   Civil Action No. 1:07cv1126LG RHW

PRIME HOLDINGS INSURANCE SERVICES, INC.,
PRIME INSURANCE COMPANY,
THE PRIME INSURANCE SYNDICATE, INC.,
HOMECOMINGS FINANCIAL, LLC and
JOHN DOES 1 THROUGH 10

                                                          **DEFENDANTS**

---

### COMPLAINT

---

JURY TRIAL DEMANDED

COME NOW Plaintiffs, RONNIE BRYANT and PATRICIA BRYANT, by and through their attorneys of record, LoCoco & LoCoco, P.A., and file this their Complaint against PRIME HOLDINGS INSURANCE SERVICES, INC., PRIME INSURANCE COMPANY, THE PRIME INSURANCE SYNDICATE, INC., HOMECOMINGS FINANCIAL, LLC, and JOHN DOES 1 THROUGH 10, and in support thereof would show the following:

PARTIES

1.

Plaintiffs, RONNIE BRYANT and PATRICIA BRYANT (hereinafter referred to as "Plaintiffs"), are adult resident citizens of Harrison County, Mississippi.

2.

Defendant, PRIME HOLDINGS INSURANCE SERVICES, INC., upon information and belief, is a foreign corporation doing business in the State of Mississippi, but not authorized by the Mississippi Department of Insurance to sell, service, adjust or otherwise engage in the business of

insuring residential real property.  PRIME HOLDINGS INSURANCE SERVICES, INC. is organized and existing under the laws of the State of Illinois, with its principal place of business in Salt Lake City, Utah, and a mailing address of 8722 S. Harrison Street, Sandy, Utah 84070.  PRIME HOLDINGS INSURANCE SERVICES, INC., may be served with process upon its agent for service of process, Edward B. Paulsen, 8722 S. Harrison Street, Sandy, Utah 84070, or on the Director of Insurance of the State of Illinois, 320 West Washington Street, Springfield, Illinois 62767, or on the Insurance Commissioner for the State of Mississippi, 501 North West Street, Suite 1001, Jackson, Mississippi 39201.

3.

Defendant, PRIME INSURANCE COMPANY, upon information and belief, is a foreign corporation doing business in the State of Mississippi, but not authorized by the Mississippi Department of Insurance to sell, service, adjust or otherwise engage in the business of insuring residential real property. PRIME INSURANCE COMPANY is organized and existing under the laws of the State of Illinois, with its principal place of business in Salt Lake City, Utah, and a mailing address of 8722 S. Harrison Street, Sandy, Utah 84070.  PRIME INSURANCE COMPANY may be served with process upon its agent for service of process, Edward B. Paulsen, 8722 S. Harrison Street, Sandy, Utah 84070, or on the Director of Insurance of the State of Illinois, 320 West Washington Street, Springfield, Illinois 62767, or on the Insurance Commissioner for the State of Mississippi, 501 North West Street, Suite 1001, Jackson, Mississippi 39201.

4.

Defendant, THE PRIME INSURANCE SYNDICATE, INC., upon information and belief, is a foreign corporation doing business in the State of Mississippi, but not authorized by the Mississippi Department of Insurance to sell, service, adjust or otherwise engage in the business of

insuring residential real property. THE PRIME INSURANCE SYNDICATE, INC. is organized and existing under the laws of the State of Illinois, with its principal place of business in Salt Lake City, Utah, and a mailing address of 8722 S. Harrison Street, Sandy, Utah 84070. THE PRIME INSURANCE SYNDICATE, INC. may be served with process upon its agent for service of process, Edward B. Paulsen, 8722 S. Harrison Street, Sandy, Utah 84070, or on the Director of Insurance of the State of Illinois, 320 West Washington Street, Springfield, Illinois 62767, or on the Insurance Commissioner for the State of Mississippi, 501 North West Street, Suite 1001, Jackson, Mississippi 39201.

5.

Defendant, HOMECOMINGS FINANCIAL, LLC, (hereinafter referred to as "HOMECOMINGS."), upon information and belief, is a foreign corporation organized and existing under the laws of the State of Delaware, authorized to do business in the State of Mississippi, with its principal place of business in Minneapolis, Minnesota, and a mailing address of 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437. HOMECOMINGS may be served with process upon its agent for service of process, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201, or on the Secretary of State for the State of Mississippi, Eric Clark, P.O. Box 136, Jackson, Mississippi 39205-0136.

6.

Defendants JOHN DOES 1 THROUGH 10 are entities affiliated with the named Defendants and/or have acted in concert with the named Defendants and whose identities are currently unknown. All allegations and claims asserted herein against the named Defendants are incorporated herein by reference against JOHN DOES 1 THROUGH 10. Said JOHN DOES 1 THROUGH 10, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to

the Federal Rules of Civil Procedure.

<u>SUBJECT MATTER AND PERSONAL JURISDICTION</u>

7.

This Court has personal jurisdiction over the Defendants PRIME HOLDINGS INSURANCE SERVICES, INC., PRIME INSURANCE COMPANY, and THE PRIME INSURANCE SYNDICATE, INC., who have transacted business, entered into contracts of insurance, sold insurance, and adjusted insurance claims in the State of Mississippi.  Personal jurisdiction over the Defendants PRIME HOLDINGS INSURANCE SERVICES, INC., PRIME INSURANCE COMPANY, and THE PRIME INSURANCE SYNDICATE, INC., exists pursuant to the Mississippi Long Arm Statute, Mississippi Code Annotated section 13-3-57.

8.

This Court has personal jurisdiction over the Defendant HOMECOMINGS who became the assignee of a Deed of Trust and otherwise transacted business incident to the servicing of a home loan on property located exclusively within Harrison County, Mississippi.  Personal jurisdiction over the HOMECOMINGS exists pursuant to the Mississippi Long Arm Statute, Mississippi Code Annotated section 13-3-49.  Further, under Federal Rule of Civil Procedure 20, this Court has supplemental jurisdiction over HOMECOMINGS, in that, Plaintiffs assert against the Defendant HOMECOMINGS a right to relief arising out of the same transaction or occurrence or series of transactions or occurrences as those asserted against the Defendants PRIME HOLDINGS INSURANCE SERVICES, INC., PRIME INSURANCE COMPANY, and THE PRIME INSURANCE SYNDICATE, INC., and Plaintiffs' Complaint also raises questions of law or fact common to all Defendants.

9.

This Court also has subject matter jurisdiction in this case pursuant to 28 United States Code section 1332, in that complete diversity exists between the Plaintiffs and all Defendants and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

## VENUE

10.

Venue is proper in the United States District Court for the Southern District of Mississippi pursuant to 28 United States Code section 1391, in that the suit respects real and personal property located exclusively within Harrison County, Mississippi, and the conduct, acts, and/or omissions upon which the cause(s) of action is/are based occurred, in whole or in part, in Harrison County, Mississippi.

## FACTS

11.

At all times herein, the Plaintiffs were, and are currently, the owners of real property located at 21054 Landon Road, Gulfport, Harrison County, Mississippi 39503.

12.

Upon information and belief, Defendant THE PRIME INSURANCE SYNDICATE, INC. is a wholly owned subsidiary of Defendant PRIME INSURANCE COMPANY, which is a wholly owned subsidiary of Defendant PRIME HOLDINGS INSURANCE SERVICES, INC. At all times pertinent herein, Defendant THE PRIME INSURANCE SYNDICATE, INC. was acting as an agent and/or alter ego to the Defendant PRIME INSURANCE COMPANY and Defendant PRIME

HOLDINGS INSURANCE SERVICES, INC. At all times pertinent herein, Defendant PRIME INSURANCE COMPANY was acting as an agent and/or alter ego to the Defendant PRIME HOLDINGS INSURANCE SERVICES, INC. and Defendant THE PRIME INSURANCE SYNDICATE, INC. At all times pertinent herein, the Defendant PRIME HOLDINGS INSURANCE SERVICES, INC. was acting as an agent and/or alter ego to the Defendant PRIME INSURANCE COMPANY and Defendant THE PRIME INSURANCE SYNDICATE, INC. All three Defendants are hereinafter referred to collectively as "PRIME."

13.

Upon information and belief, PRIME is not licensed or authorized to sell, service, adjust, or otherwise engage in the business of residential property insurance within the State of Mississippi, but has been engaged in and conducted the unauthorized business of selling insurance and adjusting insurance claims within the State of Mississippi since at least August 2004.

14.

On or about September 24, 2004, the Plaintiffs purchased the subject home and executed a Deed of Trust on the property in favor of Capitol Trust Mortgage, LLC. Thereafter, the Deed of Trust was assigned to Defendant HOMECOMINGS, to which monthly principal, interest, and escrow payments were faithfully made by the Plaintiffs. The escrow payments included all applicable taxes on the subject property, and monthly premiums for a certain insurance policy, including wind storm coverage, insuring the Plaintiffs' dwelling, other structures, contents, and loss of use of said property with Defendant PRIME, Policy Number HP04124180015 (hereinafter referred to as "the policy"), covering Plaintiffs' property located at 21054 Landon Road, Gulfport, Mississippi 39503. A copy of the Deed of Trust entered into between Plaintiffs and Capitol Trust Mortgage, LLC, and assigned to HOMECOMINGS, is attached hereto and made a part hereof as

Exhibit "A."

15.

The PRIME policy insured the dwelling for Eighty-five Thousand Dollars and no cents ($85,000.00), other structures for Eight Thousand Five Hundred Dollars and no cents ($8,500.00), contents for Twenty-five Thousand Five Hundred Dollars and no cents ($25,500.00), and loss of use for One Thousand Dollars and no cents ($1,000.00). In addition to an annual premium of One Thousand Three Hundred Fifty-nine Dollars and no cents ($1,359.00), the policy included a One Thousand Dollar and no cents ($1,000.00) standard "Hazard Deductible," and a One Thousand Seven Hundred Dollar and no cents ($1,700.00) "Wind Deductible." A copy of the policy entered into between Plaintiffs and Defendant PRIME is attached hereto and made a part hereof as Exhibit "B."

16.

The policy was underwritten, marketed, sold, and issued to Plaintiffs by PRIME, who acted by, through, and/or in conjunction with its designated agents.

17.

On August, 29, 2005, within the operative PRIME policy period of August 26, 2005 to August 26, 2006, and while the property remained subject to the Deed of Trust assigned to HOMECOMINGS, Hurricane Katrina struck the Mississippi Gulf Coast as a Category 3 hurricane. Violent and tornadic winds in excess of 140 miles per hour, objects propelled by wind, and torrential rain were all produced by Hurricane Katrina, and were all fully covered perils under the Plaintiffs' PRIME policy.

18.

As a direct and proximate result of the violent and tornadic winds produced by Hurricane Katrina, a very large tree was blown onto Plaintiffs' dwelling, destroying the roof and causing substantial damage to the substructure, one of Plaintiffs' outbuildings was completely destroyed and another sustained significant damage. Plaintiffs also suffered damage to their contents and loss of use of the property. Plaintiffs' dwelling did not have damage due to flood. No rising water entered the dwelling or outbuildings. All of Plaintiffs' damages were due to wind which caused breaches in the main dwelling and other structures allowing rain water to enter the buildings and cause further damage and deterioration to the structures and their contents.

19.

In accordance with the requirements of the policy, Plaintiffs notified PRIME of the wind damage to their home caused by Hurricane Katrina as soon as practicable, on or about September 10, 2005. In response, PRIME agents inspected the insured property in early October 2005. On November 18, 2005, nearly three months after the date of loss, PRIME, through its authorized claims handling agent Claims Direct Access, issued jointly to Plaintiffs and Defendant HOMECOMINGS Check Number 313851 in the amount of Twenty-seven Thousand Seven Hundred Ninety Dollars and Fifty-eight cents ($27,790.58). The aforementioned check included the language "Full and Final Settlement of any and all Dwelling claims arising on or about 08/29/2005." A copy of Check Number 313851 is attached hereto and made a part hereof as Exhibit "C."

20.

Plaintiffs refused to accept Check Number 313851, and requested that PRIME issue a new check without the "Full and Final Settlement of any and all Dwelling claims arising on or about 08/29/2005" language, as PRIME was contractually obligated to pay for the wind damage without

the requirement of a settlement or release; further, the amount proposed did not adequately cover the damage to Plaintiffs' property. On or about June 14, 2006, nearly ten months after the date of loss, PRIME re-issued a check made jointly payable to Plaintiffs and Defendant HOMECOMINGS without the "Full and Final Settlement . . ." language, that being Check Number 316237 for "Payment for Dwelling Structure" in the amount of Twenty-seven Thousand Seven Hundred Ninety Dollars and Fifty-eight cents ($27,790.58). A copy of the check stub for Check Number 316237 is attached hereto and made a part hereof as Exhibit "D."

21.

The unconditional payment, Check Number 316237, was only tendered by PRIME after the Plaintiffs filled a formal complaint against PRIME with the Mississippi Department of Insurance on or about April 20, 2006.

22.

Further, PRIME's delay in tendering the unconditional payment, while a thirty foot plus hole left by the fallen tree remained in the Plaintiffs' roof, unnecessarily exposed Plaintiffs' home to an additional seven months of South Mississippi weather. Despite Plaintiffs' good faith attempts to mitigate further damage, including numerous installations and re-installations of blue roof tarpings, during the nearly ten months that PRIME delayed in tendering the first unrestricted payment to Plaintiffs, unavoidable exposure to rain, humidity, and the harsh elements of South Mississippi further damaged Plaintiffs' dwelling, other structures, and contents, beyond repair. In response, the Plaintiffs hired Engineering Specialty Services, Inc. to inspect the dwelling to determine whether restoration and repair of the property was economically feasible. In response, Plaintiffs engaged the services of a public adjuster and Engineering Specialty Services, Inc., who evaluated the property and determined that the damage to the dwelling exceed fifty percent (50%) of its value and that

repair and/or restoration was economically infeasible. Engineering Speciality Services' report, issued on May 11, 2006, is attached hereto and made a part hereof as Exhibit "E."

23.

Upon receipt of PRIME Check Number 316237, Plaintiffs were required by Defendant HOMECOMINGS to endorse said check and forward it to HOMECOMINGS, where the funds were immediately placed into an insurance proceeds escrow account by Defendant HOMECOMINGS.

24.

HOMECOMINGS then instructed Plaintiffs that according to the Deed of Trust, specifically the "UNIFORM COVENANTS" provision, "SECTION 5," the insurance proceeds would be released to Plaintiffs, in incremental payments of one-third (1/3) of the total monies held in escrow, for the sole purpose of restoration and repair of the subject property. Further, in order to receive the benefit of the insurance proceeds, the Plaintiffs would be required to submit to HOMECOMINGS estimates from contractors who would perform the repairs and restoration of the Plaintiffs' dwelling. HOMECOMINGS would then release the incremental payment in a check made jointly payable to the Plaintiffs and the contractor. The "UNIFORM COVENANTS" provision, "SECTION 5," of the Deed of Trust requires that insurance proceeds be used for restoration and repair, "if the restoration and repair is economically feasible and Lender's security is not lessened." However, the "UNIFORM COVENANTS" provision, "SECTION 5," of the Deed of Trust also states that "if restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds *shall* be applied to the sums secured by the Security Instrument, whether or not then due, with the excess, if any paid to borrower."

25.

Plaintiffs forwarded the May 11th, 2006 Engineering Specialty Services, Inc. report to

HOMECOMINGS instructing that restoration and repair was not economically feasible, and requested that the insurance proceeds be applied to any outstanding or overdue payments of principal, interest, and/or late charges needed to bring the Plaintiffs' home loan account current. HOMECOMINGS ignored this and subsequent requests, and for more than one year have continued to demand that the escrowed insurance funds be used only for the restoration and repair of the dwelling.

26.

Plaintiffs also forwarded the May 11th, 2006 Engineering Specialty Services, Inc. report to PRIME with a demand for the policy limits. PRIME disputed the Plaintiffs claim for the policy limits and provided its own estimate of the damage to the Plaintiffs' property caused by PRIME's delay in tendering payment. On March 29, 2007, exactly nineteen months after the date of loss, PRIME issued jointly to Plaintiffs and Defendant HOMECOMINGS Check Number 320175 in the amount of Twenty-seven Thousand Seventy-four Dollars and Eighty-six cents ($27,074.86) on the dwelling, Check Number 320163 in the amount of Two Thousand Two Hundred Fifty-seven Dollars and Thirty-six cents ($2,257.36) on other structures, and Check Number 320174 in the amount of Twenty-five Thousand Five Hundred Dollars and no cents ($25,500.00) on contents. Plaintiffs accepted these checks only as partial payment of the insurance proceeds owed by PRIME under the policy. No release or settlement papers were signed by the Plaintiffs. A copy of Check Numbers 320175, and check stubs for Check Numbers 320163, and 320174 are attached hereto and made a part hereof as Exhibits "F," "G," and "H" respectively.

27.

Again, upon receipt of PRIME Check Number 320163, Plaintiffs were required by Defendant HOMECOMINGS to endorse said check and forward it to HOMECOMINGS, where the funds were

immediately placed by HOMECOMINGS into the aforementioned insurance proceeds escrow account. HOMECOMINGS continued to ignore the Plaintiffs' engineering report or to acknowledge the economic infeasibility of restoration and repair.

28.

Due to HOMECOMINGS refusal to recognize the economic infeasibility of repair and restoration of the dwelling, Plaintiffs began building a garage/apartment home on their property using the insurance proceeds. However, rather than releasing the funds in increments of 1/3, as HOMECOMINGS was required to due under SECTION 5 of the UNIFORM COVENANTS PROVISION of the Deed of Trust, Plaintiffs only received reimbursement from HOMECOMINGS for materials they bought with other monies. On or about August 2, 2006, Plaintiffs reached the fifty percent (50%) stage of completion on the garage/apartment home, and requested that HOMECOMINGS release Eight Thousand Two Hundred Ninety Four Dollars and Fifty-eight cents ($8,294.58), or 1/3 of the insurance proceeds then held in escrow, so that the roof and slab could be completed. A representative of HOMECOMINGS inspected the premises and agreed that the project was fifty percent (50%) complete. However, HOMECOMINGS negligently or in bad faith delayed tendering payment to the Plaintiffs for nearly five months. HOMECOMINGS finally released the next installment on or about January 17, 2007. In the interim, unavoidable exposure to rain, humidity, and the harsh elements of South Mississippi substantivally destroyed the Plaintiffs' roofless garage/apartment home. HOMECOMINGS delay in tendering the fifty percent (50%) completion installment caused economic waste, and such economic waste should be charged against HOMECOMINGS.

29.

Further, although the Bryants' had repeatedly informed HOMECOMINGS of the economic

infeasibility of repair and restoration, HOMECOMINGS instituted forced placed hazard insurance on the property with American Security Insurance Company on or about November 3, 2006. The property was at that time, and is now, uninsurable. Upon information and belief, HOMECOMINGS acted in bad faith or negligently failed to investigate the subject property prior to force placing insurance at a cost to Plaintiffs' of Nine Hundred Twenty-four dollars and no cents ($924.00). A copy of the forced place insurance policy is attached hereto and made a part hereof as Exhibit "I."

30.

Also on or about November 3, 2006, HOMECOMINGS began sending notices of intent to accelerate the Bryants' loan, despite the fact that HOMECOMINGS was holding in escrow an amount in excess of any past due amount owed by the Bryants.   On or November 8, 2006, the Bryants requested that the insurance proceeds held in escrow be applied to bring the balance of their loan current. This and subsequent requests were refused and/or ignored by HOMECOMINGS. HOMECOMINGS continued to send letters to the Bryants threatening acceleration and/or foreclosure.

31.

Under Mississippi Code Annotated section 89-1-59 the Plaintiffs may cure any default on a mortgage "by paying the amount of the note or installment then due or past due by its terms, with all accrued costs, attorneys' fees and trustees' fees on the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated." Further, section 89-1-59 provides, "[a]ny such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default." The insurance proceeds held in escrow by HOMECOMINGS must, therefore, be applied to the outstanding or overdue payments of principal, interest, and/or late charges needed to

bring the Plaintiffs' home loan account current, with the remainder released to Plaintiffs.

32.

On or about September 20, 2007, more than ten months after the Bryants' original request, GMAC, a parent company of HOMECOMINGS, intervened an ordered the Bryants' account brought current using the insurance funds held in escrow. This ten month delay in complying with the Bryants' request has had a substantial and irreversible negative effect on the Bryant's credit rating, and is yet another example of HOMECOMINGS bad faith and or negligence in dealing with the Bryants' account.

33.

HOMECOMINGS is currently holding approximately Four Thousand Two Hundred Fifty-four Dollars and Fifty-two cents ($4,254.52) of Plaintiffs' insurance proceeds in escrow. Such proceeds should be immediately released to Plaintiffs.

34.

HOMECOMINGS has failed to act in accordance with the Deed of Trust and has acted in complete and utter disregard for the financial well being of the Plaintiffs. Further, HOMECOMINGS has in bad faith and/or negligently failed to properly investigate the damage to Plaintiff's property, failed to properly administer the insurance escrow funds, or otherwise deal in good faith under its Deed of Trust with Plaintiffs.

35.

Plaintiffs' dwelling and all contents therein have been completely destroyed as a direct and proximate result of PRIME's failure to comply with its duty to timely pay the Plaintiffs' insured claim, and has been substantially exacerbated by HOMECOMINGS' failure to comply with its duty

to properly apply the insurance proceeds under the Deed of Trust. Further, one of Plaintiffs outbuildings has been completely destroyed, and the other has been substantially damaged. Plaintiffs have also lost the use of their dwelling, contents, and one of their outbuildings.

36.

Plaintiffs have performed all of the insureds' obligations under the contract of insurance with PRIME and are entitled to payment of their claim against PRIME.

37.

PRIME continues to deny Plaintiffs' claim for full coverage under the policy, and has thus far paid only Fifty-four Thousand Eight Hundred Sixty-five Dollars and Forty-four cents ($54,865.44) of the Eighty-five Thousand Dollars and no cents in coverage on the dwelling, Two Thousand Two Hundred Fifty-seven Dollars and Thirty-six cents ($2,257.36) of the Eight Thousand Five Hundred Dollars and no cents ($8,500.00) on the other structures, and no loss of use. Although payment was unduly delayed through PRIME's negligence and/or bad faith, Plaintiffs have finally received full policy limits of Twenty-five Thousand Five Hundred Dollars and no cents ($25,500.00) on contents.

<u>COUNT ONE</u>

(Declaration of Insurance Coverage: Against PRIME)

38.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-32 of this Complaint.

39.

Plaintiffs seek a Declaratory Judgement pursuant to Federal Rule of Civil Procedure 57 for

the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the subject policy.

40.

Based on the representations made by PRIME and its agents both before and after Hurricane Katrina, the express subject policy coverage provisions, and the "Wind Deductible," Plaintiffs are entitled to full insurance coverage under the subject policy for all damage to insured property and loss of use caused by Hurricane Katrina and PRIME's delay in rendering payment therefore.

36.

Plaintiffs, therefore, seek a declaration that the subject policy provided full insurance coverage for all damage to the insured dwelling, other structures, contents, and loss of use herein complained of.

## COUNT TWO

(Specific Performance of Insurance Contract: Against PRIME)

41.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-36 of this Complaint.

42.

PRIME entered into the subject contract of insurance with the Plaintiffs wherein it clearly and expressly agreed to provide insurance coverage for physical loss to the Plaintiffs' dwelling, other structures, contents, and loss of use proximately and efficiently caused by wind damage. Plaintiffs in turn paid PRIME a substantial annual premium and even agreed to a "Wind Deductible" in consideration for the agreed upon coverage.

43.

Plaintiffs have now suffered the total destruction of their insured dwelling, one of their outbuildings, their contents, and loss of use as a proximate and direct result of wind damage caused by Hurricane Katrina and PRIME's unreasonable delay in tendering payment on Plaintiffs' claim.

44.

Plaintiffs have performed their end of the bargain and are accordingly entitled to specific performance of the subject insurance contract. The Court should therefore require PRIME to specifically perform such agreement.

COUNT THREE

(Specific Performance of Deed of Trust: Against HOMECOMINGS)

45.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-40 of this Complaint.

46.

HOMECOMINGS took the assignment of the Deed of Trust with Plaintiffs whereby it clearly agreed to apply insurance proceeds held in escrow to the balance of the loan, if, as here, restoration and repair was economically infeasible.

47.

Plaintiffs have complied with their obligations under the Deed of Trust to inform HOMECOMINGS of the economic infeasibility of restoration and repair by repeatedly forwarding to HOMECOMINGS a copy of the aforementioned Engineering Specialty Services, Inc. report, and have repeatedly requested that the insurance proceeds be applied to bring the balance of their loan

current. Furthermore, Plaintiffs attorneys have repeatedly forwarded the Engineering Specialty Services, Inc. report to HOMECOMINGS and have requested that the insurance proceeds be applied to bring the balance of the Plaintiffs' loan current. All such requests and communications have been ignored by HOMECOMINGS, and HOMECOMINGS took no action of their own to have engineers inspect the property to determine if repair or restoration was economically feasible.

48.

HOMECOMINGS has habitually ignored the requests of Plaintiffs and their counsel to comply with the Deed of Trust and continue to wrongfully hold Plaintiffs' insurance proceeds in escrow.

49.

Plaintiffs have performed their end of the bargain with HOMECOMINGS to the best of their ability and have only fallen delinquent in their payment obligations due to the fact that HOMECOMINGS continues to wrongfully hold in escrow insurance proceeds in an amount in excess of any overdue payments owed by Plaintiffs, and despite Plaintiffs' and their attorneys' repeated requests that the insurance proceeds be applied to bring Plaintiffs' loan balance current. The Court should therefore require HOMECOMINGS to specifically perform such agreement by applying the insurance proceeds to the payment of any outstanding or overdue payments of principal, interest, and/or late charges needed to bring the Plaintiffs home loan account current and release the remainder to Plaintiffs.

## COUNT FOUR

(Willful Breach of Contract: Against PRIME)

50.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-49 of this Complaint.

51.

The Plaintiffs entered into a contractual relationship with the Defendants in which the Plaintiffs paid premiums to secure insurance coverage on the dwelling, other structures, contents, and loss of use at issue in this case. The Defendant, PRIME, pursuant to the contract of insurance, assumed the obligation to promptly investigate all claims and to timely pay damages caused by covered events under the policy. The damage which occurred to the property at issue in this case was due to wind, there was no flooding, and as such this was a covered event. Therefore, the Defendant, PRIME, owes a contractual duty to the Plaintiffs for damage and losses suffered as a result of this covered event.

52.

The Plaintiffs have taken all steps required of them under the contract of insurance to inform the Defendant, PRIME, of the loss, to protect the property from further damage, and have informed PRIME of the nature and extent of the damage sustained to the covered property. Plaintiffs have also repeatedly made the property available for inspection by PRIME adjusters, but PRIME has failed to properly and timely investigate and evaluate the damage to Plaintiffs' property or to tender proper payment therefore.

53.

As a direct and proximate result of the Defendant, PRIME's, willful breach of contract as set forth above, the Plaintiffs have suffered and continue to suffer property damage and monetary loss, as well as emotional distress. At all times relevant hereto, the Defendant, PRIME's conduct was and continues to be willful, wanton, malicious, outrageous, and beyond the bounds of reasonableness,

and evidences reckless disregard for the rights of the Plaintiffs. The Plaintiffs are entitled to recover damages from the Defendant, PRIME, to adequately compensate the Plaintiffs for the damages caused by PRIME's willful breach of contract including but not limited to extra-contractual damages of attorney's fees, interest, and other incidental and consequential damages along with punitive damages, all of which are a proximate result of the actions and omissions of PRIME.

COUNT FIVE

(Willful Breach of Contract: Against HOMECOMINGS)

54.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-53 of this Complaint.

55.

Plaintiffs entered into a contractual agreement, the duties and obligations of which were assigned to HOMECOMINGS, in which  HOMECOMINGS, pursuant to the Deed of Trust, specifically the "UNIFORM COVENANTS" provision, "SECTION 5," assumed the duty and obligation to abide by the terms of the agreement for the application of insurance proceeds in the event that restoration and repair was not economically feasible. The damage which occurred to the property at issue in this case has rendered restoration and repair of the Plaintiffs' dwelling economically infeasible, Plaintiff's have advised HOMECOMINGS accordingly and have provided proof thereof, and therefore, HOMECOMINGS owes a contractual duty to the Plaintiffs to apply the insurance funds held in escrow to the outstanding balance of the loan and to forward the remainder to the Plaintiffs.

56.

Plaintiffs have taken all reasonable steps required of them under the Deed of Trust and have repeatedly provided HOMECOMINGS with proof of the economic infeasibility of restoration and repair. HOMECOMINGS has habitually ignored such proof and has failed to inspect the property to ascertain for themselves whether or not such repair or restoration is economically feasible, and continues to wrongfully hold the insurance proceeds in escrow.

57.

As a direct and proximate result of the HOMECOMINGS' willful breach of contract as set forth above, the Plaintiffs have suffered and continue to suffer property damage and monetary loss, as well as emotional distress. Further, Plaintiffs' credit has been ruined and their ability to seek refinancing has been destroyed due to HOMECOMINGS' refusal to apply the insurance proceeds to the balance of their loan. At all times relevant hereto, HOMECOMINGS' conduct was and continues to be willful, wanton, malicious, outrageous, and beyond the bounds of reasonableness, and evidences reckless disregard for the rights of the Plaintiffs. The Plaintiffs are entitled to recover damages from the Defendant, HOMECOMINGS, to adequately compensate the Plaintiffs for the damages caused by HOMECOMINGS' willful breach of contract including but not limited to extra-contractual damages of attorney's fees, interest, and other incidental and consequential damages along with punitive damages, all of which are a proximate result of the actions and omissions of HOMECOMINGS.

## COUNT SIX

### (Bad Faith: Against PRIME)

58.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-57 of this Complaint.

59.

The aforementioned actions of PRIME referenced above in Paragraphs 1 through 58 of this Complaint, specifically the inclusion of the "Full and Final Settlement . . ." language on the initial check tendered to Plaintiffs, PRIME's nearly ten month delay in tendering any unconditional payment to Plaintiffs, and PRIME's unreasonable refusal to tender the full policy limits to Plaintiffs, along with other actions and/or omissions, constitute a willful, wanton, intentional and/or grossly negligent breach of contract with the Plaintiffs which was the proximate cause of substantial damage to the Plaintiffs such as to entitle Plaintiffs to punitive and/or exemplary damages, including attorney's fees.

## COUNT SEVEN

(Bad Faith: Against HOMECOMINGS)

60.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-59 of this Complaint.

61.

The aforementioned actions of HOMECOMINGS referenced above in Paragraphs 1 through 61 of this Complaint, specifically including, but not limited to, HOMECOMINGS' actions of habitually ignoring any and all requests and communications of the Plaintiffs and their attorneys, including but not limited to the aforementioned Engineering Specialty Services, Inc. report, the

numerous requests for application of the insurance proceeds pursuant to the Deed of Trust, the numerous letters by Plaintiffs' attorneys, and HOMECOMINGS' failure to use any manner of diligence in attempting to ascertain the economic feasibility of restoration and repair of the subject property, along with other actions and/or omissions, constitute a willful, wanton, intentional and/or grossly negligent breach of contract with the Plaintiffs which was the proximate cause of substantial damage to the Plaintiffs such as to entitle Plaintiffs to punitive and/or exemplary damages, including attorney's fees.

COUNT EIGHT

(Negligence: Against PRIME)

62.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-61 of this Complaint.

63.

Under the contract of insurance at issue in this claim and under Mississippi law, PRIME owed a duty to the Plaintiffs to promptly investigate the claim of loss to the Plaintiffs' property and to timely process and pay sums owing to the Plaintiffs under the policy.

64.

PRIME has breached its duty owed to Plaintiffs by its negligent handling, investigating, and processing of the Plaintiffs' claim. PRIME has also negligently delayed payment of the sums due and owing to the Plaintiffs, which has in and of itself caused further damage to the Plaintiffs. The negligence of PRIME in investigating, accepting, processing, handling, and otherwise dealing with the claims has proximately caused damages to the Plaintiffs in the amount of those sums which are

due and owing and have not yet been paid and other incidental and consequential damages, including attorney's fees.

## COUNT NINE

### (Negligence: Against HOMECOMINGS)

65.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-64 of this Complaint.

66.

Under the Deed of Trust at issue in this claim and under Mississippi law, HOMECOMINGS owed a duty to the Plaintiffs to promptly investigate the claim of economic infeasibility of repair and restoration of the subject premises and to timely apply the insurance proceeds held in escrow to the outstanding or overdue payments of principal, interest, and/or late charges needed to bring the Plaintiffs' home loan account current, and to release the remainder to the Plaintiffs.

67.

HOMECOMINGS has breached its duty owed to Plaintiffs by its negligent handling, investigating, and processing of the Plaintiffs' insurance proceeds. HOMECOMINGS has also negligently delayed payment of the sums held in escrow due and owing to the Plaintiffs, which has in and of itself caused further damage to the Plaintiffs, including but not limited to damaging the Plaintiffs' credit and preventing Plaintiffs from being able to refinance the property. The negligence of HOMECOMINGS in processing, handling, and otherwise dealing with the insurance proceeds has proximately caused damages to the Plaintiffs in the amount of those sums which are held in escrow, due and owing to the Plaintiffs or for their benefit, and have not yet been paid to Plaintiffs

or otherwise applied to their loan balance, together with other incidental and consequential damages, including attorney's fees.

## COUNT TEN

(Gross Negligence: Against PRIME)

68.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-67 of this Complaint.

69.

PRIME has been grossly negligent and reckless in the handling, investigation, and processing of the Plaintiffs' claim. PRIME has more than enough verifiable information and evidence to show that more sums are owed for the dwelling coverages, sums are owed for other structures coverages, and sums are owed for Plaintiffs' loss of use. The Plaintiffs' property loss well exceeds the limits and should be paid in full, and there is extensive additional loss of use along with other incidental and consequential damages. PRIME has repeatedly asked Plaintiffs for information which has already been provided, and continues to ask for information which it has or which is not needed, solely for the purpose of delay.

## COUNT ELEVEN

(Gross Negligence: Against HOMECOMINGS)

70.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-69 of this Complaint.

71.

HOMECOMINGS has been grossly negligent and reckless in the handling, investigation, and processing of the Plaintiffs' insurance proceeds. HOMECOMINGS has more than enough verifiable information and evidence to show that repair and restoration of the subject premises is not economically feasible and that the escrow funds should be applied to the outstanding or overdue payments of principal, interest, and/or late charges needed to bring the Plaintiffs' home loan account current, with the remainder released to the Plaintiffs. HOMECOMINGS delay in properly applying the insurance proceeds has caused extensive additional incidental and consequential damages to Plaintiffs, including but not limited to damaging the Plaintiffs' credit and preventing Plaintiffs' from being able to refinance the property. HOMECOMINGS has repeatedly and habitually ignored Plaintiffs' and their attorney's requests regarding the application of the insurance proceeds, when all necessary information has been provided, solely for the purpose of delay.

## COUNT TWELVE

(Breach of Duty of Good Faith and Fair Dealing: Against PRIME)

72.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-71 of this Complaint.

73.

In every contract entered into in the State of Mississippi there is an implied duty of good faith and fair dealing. The implied duty prevents one party from exercising judgment in such a manner as to evade the spirit of the transaction or to deny the other party the expected benefits of the contract.

74.

PRIME's conduct in failing to timely investigate, process, and pay sums due on Plaintiffs' insurance claim constitutes a breach of this implied duty of good faith and fair dealing and violates the standards of decency, fairness, and reasonableness.

75.

As a direct and proximate result of PRIME's breach of this implied duty of good faith and fair dealing, the Plaintiffs have suffered property damage, monetary loss, and emotional distress. The Plaintiffs are entitled to recover from PRIME monetary damages to compensate the Plaintiffs for such property damage, monetary loss, and emotional distress, including punitive damages and attorney's fees.

COUNT THIRTEEN

(Breach of Duty of Good Faith and Fair Dealing: Against HOMECOMINGS)

76.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-75 of this Complaint.

77.

In every contract entered into in the State of Mississippi there is an implied duty of good faith and fair dealing. The implied duty prevents one party from exercising judgment in such a manner as to evade the spirit of the transaction or to deny the other party the expected benefits of the contract.

78.

HOMECOMINGS' conduct in failing to timely investigate, process, and apply insurance

proceeds held in escrow from Plaintiffs' insurance claim constitutes a breach of this implied duty of good faith and fair dealing and violates the standards of decency, fairness, and reasonableness.

79.

As a direct and proximate result of HOMECOMINGS' breach of this implied duty of good faith and fair dealing, the Plaintiffs have suffered property damage, monetary loss, and emotional distress.  The Plaintiffs are entitled to recover from HOMECOMINGS monetary damages to compensate the Plaintiffs for such property damage, monetary loss, and emotional distress, including punitive damages and attorney's fees.

## COUNT FOURTEEN

(Conversion: Against HOMECOMINGS)

80.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-79 of this Complaint.

81.

At a time subsequent to June 14, 2006, HOMECOMINGS unlawfully took and converted to its own use certain property of the Plaintiffs, herein described as Check Number 316237 in the amount of Twenty-seven Thousand Seven Hundred Ninety Dollars and Fifty-eight cents ($27,790.58).

82.

At a time subsequent to March 29, 2007, HOMECOMINGS unlawfully took and converted to its own use certain property of the Plaintiffs, herein described as Check Number 320175 in the amount of Twenty-seven Thousand Seventy-four Dollars and Eighty-six cents ($27,074.86).

83.

All or a portion of said funds are being unlawfully held in the possession of HOMECOMINGS, and should be immediately returned to Plaintiffs or otherwise applied for their benefit.

<u>COUNT FIFTEEN</u>

(Application for Injunctive Relief: Against HOMECOMINGS)

84.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-83 of this Complaint.

85.

Plaintiffs entered into a contractual agreement, the duties and obligations of which were assigned to HOMECOMINGS, in which  HOMECOMINGS, pursuant to the Deed of Trust, specifically the "UNIFORM COVENANTS" provision, "SECTION 5," assumed the duty and obligation to abide by the terms of the agreement for the application of insurance proceeds in the event that restoration and repair was not economically feasible.  The damage which occurred to the property at issue in this case has rendered restoration and repair of the Plaintiffs' dwelling economically infeasible, Plaintiffs have advised HOMECOMINGS accordingly and have provided proof thereof, and therefore, HOMECOMINGS owes a contractual duty to the Plaintiffs to apply the insurance funds held in escrow to the outstanding balance of the loan and to forward the remainder to the Plaintiffs.

86.

Plaintiffs have taken all reasonable steps required of them under the Deed of Trust and have

repeatedly provided HOMECOMINGS with proof of the economic infeasibility of restoration and repair. HOMECOMINGS has habitually ignored such proof and has failed to inspect the property to ascertain for themselves whether or not such repair or restoration is economically feasible, and continues to wrongfully hold the insurance proceeds in escrow.

87.

As a direct and proximate result of HOMECOMINGS' willful breach of contract as set forth above, the Plaintiffs have suffered and will continue to suffer substantial and irreparable harm property damage and monetary loss, as well as emotional distress. Further, Plaintiffs' credit has been ruined and their ability to seek refinancing has been destroyed due to HOMECOMINGS refusal to apply the insurance proceeds to the balance of their loan.

88.

Therefore, Plaintiffs respectfully ask this Court for a preliminary and/or permanent injunction, pursuant to Federal Rule of Civil Procedure 65, enjoining HOMECOMINGS from continuing to hold Plaintiffs insurance proceeds in escrow and requiring HOMECOMINGS to apply said insurance proceeds to the outstanding balance of the loan and to forward the remainder to the Plaintiffs.

<u>COUNT SIXTEEN</u>

(Additional Application for Injunctive Relief: Against HOMECOMINGS)

89.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-88 of this Complaint.

90.

Despite the fact that HOMECOMINGS has within its possession an amount of Plaintiffs funds greater than the amount Plaintiffs owe in outstanding or overdue payments of principal, interest, and/or late charges, and ignoring Plaintiffs' numerous requests that the insurance proceeds be used to bring their account balance current, HOMECOMINGS has repeatedly threatened to institute foreclosure proceedings.

91.

On or about April 11, 2007, Plaintiffs filed with the Chancery Court of Harrison County, Mississippi, their Petition for Preliminary Injunction for Relief from Inequitable Mortgage Foreclosure, pursuant to Mississippi Code Annotated section 89-1-301 to 89-1-329 and Mississippi Rule of Civil Procedure 65.  A copy of the petition is attached hereto and made a part hereof as Exhibit "J."

92.

Therefore, Plaintiffs respectfully ask this Court for a preliminary and/or permanent injunction, pursuant to Federal Rule of Civil Procedure 65, enjoining HOMECOMINGS from instituting any such foreclosure proceedings on the property located at 21054 Landon Road, Gulfport, Harrison County, Mississippi 39503.

REMEDIES

93.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in Paragraphs 1-92 of this Complaint.

94.

Plaintiffs are entitled to full insurance coverage under the subject policy for the damages to the insured residence and property caused by Hurricane Katrina and the Bad Faith Delay of PRIME in investigating, processing, and paying monies owed to Plaintiffs under the insurance policy; Plaintiffs are entitled to the use and benefit of the insurance proceeds willfully, wantonly, negligently and in bad faith held in escrow by HOMECOMINGS, as well as other equitable relief set forth in the Complaint, including, but not limited to:

A.    A Declaration by this Court against PRIME that the subject policy provides full and comprehensive insurance coverage for the damage caused to Plaintiffs' dwelling, other structures, contents, and loss of use by Hurricane Katrina and that PRIME unreasonably delayed the unconditional payment of monies due under the contract of insurance;

B.    Specific Performance of the subject policy against PRIME;

C.    Specific Performance of the subject Deed of Trust against HOMECOMINGS;

D.    Damages caused by PRIME's Willful Breach of Contract, including attorney's fees and extra-contractual damages, incidental, consequential and punitive damages;

E.    Damages caused by HOMECOMINGS' Willful Breach of Contract, including attorney's fees and extra-contractual damages, incidental, consequential and punitive damages;

F.    Damages caused by PRIME's Bad Faith breach of contract and refusal/failure to timely investigate, process, and pay monies owed to Plaintiffs under the insurance policy for wind losses sustained due to Hurricane Katrina, including attorney's fees,

extra-contractual damages, incidental, consequential and punitive damages;

G.    Damages caused by HOMECOMINGS' Bad Faith breach of contract and refusal/failure to timely investigate, process, and pay monies owed to Plaintiffs under the Deed of Trust, including attorney's fees, extra-contractual damages, incidental, consequential and punitive damages;

H.    Damages caused by PRIME's negligence and gross negligence, including attorney's fees, extra-contractual damages, incidental, consequential and punitive damages;

I.    Damages caused by HOMECOMINGS' negligence and gross negligence, including attorney's fees, extra-contractual damages, incidental, consequential and punitive damages;

J.    Damages caused by PRIME's Breach of Duty of Good Faith and Fair Dealing in the investigating, processing, and paying of monies owed to the Plaintiffs under the insurance policy, including attorney's fees, extra-contractual damages, incidental, consequential and punitive damages;

K.    Damages caused by HOMECOMINGS' Breach of Duty of Good Faith and Fair Dealing in the investigating, processing, and paying of monies owed to the Plaintiffs under the Deed of Trust, including attorney's fees, extra-contractual damages, incidental, consequential and punitive damages;

L.    An injunction enjoining HOMECOMINGS from holding the insurance proceeds in escrow and requiring HOMECOMINGS to apply said insurance proceeds to the outstanding balance of the Plaintiffs' loan and to forward the remainder to the Plaintiffs;

M.  An injunction, pursuant to Mississippi Code Annotated section 89-1-301 to 89-1-329, enjoining HOMECOMINGS from instituting any foreclosure proceedings on the property located at 21054 Landon Road, Gulfport, Harrison County, Mississippi 39503;

N.  Attorney's Fees and expenses against both PRIME and HOMECOMINGS, including but not limited to attorney's fees owed in an action against unauthorized foreign insurance companies under Mississippi Code Annotated section 83-21-51 against PRIME;

O.  Court costs and expenses;

P.  Pre-judgement and post-judgement interest; and

Q.  Any and all other equitable relief deemed appropriate by the Court.

<u>JURY TRIAL DEMAND</u>

95.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon a trial of this cause, judgement will be entered jointly and severally against PRIME HOLDINGS INSURANCE SERVICES, INC., PRIME INSURANCE COMPANY, THE PRIME INSURANCE SYNDICATE, INC., HOMECOMINGS FINANCIAL, LLC, and JOHN DOES 1 THROUGH 10 for all damages to Plaintiffs herein alleged in paragraphs 1 through 94 of this Complaint, in the amount of Seven Million Dollars and no cents ($7,000,000), the punitive damages portion of the award being based on the net financial worth of the defendants, together with pre-judgment and post-judgment interest, with all attorney fees and costs, and if mistaken in the relief prayed for, any other relief, general or special, at law or in equity, to which they may show they are justly entitled.

Respectfully submitted, this the _____ day of October, 2007.

RONNIE BRYANT AND PATRICIA BRYANT

*PLAINTIFFS*

BY: _____
     Virginia L. LoCoco, MS Bar # 8483

BY: _____
     Ian L. Baker, MS Bar #102272

LoCoco & LoCoco, P.A.

P.O. Box 6014

10243 Central Avenue

D'Iberville, MS 39540

Tel. (228) 392-3799; Fax (228) 392-3890