IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONNIE BRYANT and PATRICIA BRYANT | § § § | PLAINTIFFS |
| v. | § § | Civil Action No. 1:07CV1126-LG-RHW |
| THE PRIME INSURANCE SYNDICATE, INC. and JOHN DOES 1-10 | § § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [121] filed by the defendant, The Prime Insurance Syndicate, Inc. The plaintiffs, Ronnie and Patricia Bryant, responded to the Motion, and Prime filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment should be granted as to the Bryants' bad faith claim and denied in all other respects.

**FACTS**

In 2004, the Bryants purchased a home on Landon Road in Gulfport, Mississippi. (Compl. at 5-6). They obtained a homeowners insurance policy (policy number HP0412418) from Prime that included wind coverage. (Ex. 1 to Def.'s Mot.) The policy limits were $85,000 for the dwelling, $8500 for other structures, $25,500 for personal property, and $1000 for loss of use. (*Id.*) The wind deductible was $1700.00. (*Id.*)

On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast. Its high winds blew trees onto the Bryants' home and two sheds that were on the property, which allowed rainwater to enter the structures. (Ex. 2 to Def.'s Mot.) It is undisputed that there was no flood damage to the property. The Bryants filed a claim with Prime, and Prime hired an adjuster,

David J. Favre, to inspect the damage and determine the actual cash value of the loss. (*Id.*) Favre determined that the actual cash value of the damage to the dwelling was $27,534.63, and that the actual cash value of the damage to the other structures was $2,305.95. (*Id.*) Favre also noted that the contents of the home and other structures were damaged and noted that Prime should see the insureds' contents list to determine the value of that damage. (*Id.*)

On October 26, 2005, Prime received Favre's report, and on November 9, 2005, Prime noted in its claims diary that it appeared that the Bryants would have a contents claim but there was not enough information to adjust the claim. (Ex. 3 to Pls.' Resp.) On November 16, 2005, Prime, by and through its claims-handling agent, Claims Direct Access, sent Ronnie Bryant a letter that stated: "It is CDA's understanding that your property located at 21054 Landon Road, Gulfport, Mississippi, sustained $27,790.58 of covered losses due to wind." (Ex. 3 to Def.'s Mot.) Prime enclosed a check in that amount, as well as Favre's estimate and a general release of all property damage claims. (*Id.*) The check contained the language "full and final settlement of any and all dwelling claims arising on or about 08/29/2005." (*Id.*) The letter did not mention the contents claim or request additional information concerning that claim. (*See id.*)

Prime's claims diary reflects that Ronnie Bryant called on December 6 and December 13, 2005, and stated that the check was insufficient to cover the damage to his property. (Ex. 3 to Pls.' Resp.) The Prime representative that spoke with Bryant told him that he was required to hire his own adjuster if he disagreed with Prime's adjustment. (*Id.*) Bryant also told Prime that he had not been paid for his contents claim, and he was instructed to submit a proof of loss. (*Id.*) There is no evidence that Bryant submitted a proof of loss concerning the contents claim prior to his decision to hire a public adjuster.

On April 20, 2006, the Bryants filed a complaint against Prime with the Department of Insurance, stating that they could not cash the check they received from Prime because the check was insufficient to repair their home and included the full and final settlement language. (Ex. 4 to Def.'s Mot.) On May 4, 2006, Prime responded to the complaint, agreeing that the Bryants could cash the check and it would not be considered a full and final settlement. (Ex. 6 to Def.'s Mot.) However, the Bryants returned the check to Prime on May 9, 2006. (Ex. 3 to Pls.' Resp.)

On May 22, 2006, Michael Graham sent a facsimile to Prime, stating that he had been hired by the Bryants as an adjuster. (Ex. 7 to Def.'s Mot.) He attached a copy of an engineer's report that stated that the dwelling needed to be completely removed and replaced. (*Id.*) Prime responded to Graham's facsimile on June 7, 2006, stating that it would reissue the $27,790.58 check without the full and final settlement language. (Ex. 8 to Def.'s Mot.) Prime also requested a detailed actual cash value assessment of the damage from Graham, so that the demand for supplemental payment could be considered. (*Id.*) The $27,790.58 check was reissued to the Bryants on June 23, 2006, without the full and final settlement language. (Ex. 9 to Def.'s Mot.)

On August 11, 2006, Graham informed Prime that he had determined that the actual cash value of the damage to the dwelling was the policy limits: $85,000. (Ex. 10 to Def.'s Mot.) He also opined that the actual cash value of the damage to the other structures was $5687.17 and enclosed an estimate for the contents claim in the amount of $48,385.40. (*Id.*)

On November 1, 2006, Prime demanded an appraisal of the loss pursuant to the policy and stated that Favre would no longer be working on the claim, due to inappropriate comments he allegedly made to Graham. (Ex. 11 to Def.'s Mot.) On November 7, 2006, Graham notified Prime that he would be serving as the Bryants' appraiser. (Ex. 12 to Def.'s Mot.) Graham and

Prime decided not to choose an umpire unless they could not agree on the value of the claim. (Ex. 13 to Def.'s Mot.) Prime selected Leonard Quick as its appraiser.

Bryant called Prime on February 22, 2007, and stated that he was firing Graham. However, on that same say, Quick sent a letter to Prime in which he stated that he and Graham had reached a settlement agreement regarding the claim. (Ex. 15 to Def.'s Mot.) The letter was dated February 22, 2007. He claimed that Graham had received authority from Bryant to agree to the settlement. (*Id.*) He stated that it was agreed that the actual cash value of the damage to the dwelling was $54,259.49, the actual cash value of the damage to the sheds was $2460.28, and the damaged contents totaled $2,436.43. (*Id.*) These figures included the $27,790.58 that had previously been paid to the Bryants. (*Id.*)

Prime's claim notes reflect that Prime received Quick's letter regarding the settlement agreement on February 26, 2007, but state: "I have offered the insured $46,905.34 . . . . The insured told me he would think about that over the weekend and get back to me today." (Ex. 3 to Pls.' Resp.). After Bryant rejected that offer, Prime offered him $53,132.22. (*Id.*) Prime sent Bryant three checks totaling $54,832.22 on March 30, 2007.[1] (*Id.*) The letter that accompanied the checks stated: "These [checks] are not intended to be a full and final settlement of claims, however they do represent what Prime feels is the full value of your claim. If you feel you are still owed additional funds I would be happy to discuss any issue you have." (Ex. 24 to Pls.' Resp.)

---

[1] The Bryants were paid $27,074.86 for damage to the dwelling, $2257.36 for damage to other structures, and $25,500 for damage to contents. (Ex. 24 to Pls.' Resp.) As explained *supra*, they had previously been paid $27,790.58. Thus, the Bryants were paid a total of $82,622.80 for damage caused by Hurricane Katrina.

After receiving the checks, Bryant hired an attorney, and he and his wife filed this lawsuit on October 3, 2007. (Compl.) They amended their complaint on March 18, 2008, seeking a declaratory judgment and specific performance. (Am. Compl.) They have also filed a willful breach of contract claim, a bad faith claim, a negligence claim, a gross negligence claim, a breach of the duty of good faith and fair dealing claim. (*Id.*) In addition to policy limits, they seek attorneys' fees, and incidental, consequential, and punitive damages. (*Id.*)

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. FED. R. CIV. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

Prime contends that the Bryants' claims for breach of the duty of good faith and fair dealing should be dismissed. It also asserts that it is entitled to judgment as a matter of law as to all of the Bryants' claims, because the appraisers selected by the parties agreed that the damage to the Bryants' property totaled $59,156.20, and Prime has actually paid the Bryants an amount that exceeds that award-- $82,622.80. Prime also argues that it is entitled to summary judgment

regarding the bad faith claim because the claim was nothing more than a pocketbook dispute. In the alternative, if this Court should find that the appraisal award is invalid, Prime argues that this case should be dismissed so that the appraisal process can be completed.

## I. The Duty of Good Faith and Fair Dealing

Prime argues that the Bryants' claim for breach of the duty of good faith and fair dealing should be dismissed, because the duty of good faith and fair dealing does not arise in the first party insurance context unless the insurer allegedly breaches the duty to defend a lawsuit filed by a third party against the insured. In support of this assertion, Prime relies on *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844 (S.D. Miss. 1990). However, after the *Burley* decision was rendered, the Mississippi Supreme Court held that the implied covenant of good faith and fair dealing applies to every contract, including insurance contracts. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1188-89 (Miss. 1990). Importantly, the contract at issue in *Williams* was a first party life insurance policy and a breach of the duty to defend was not at issue. *See Williams*, 566 So. 2d at 1174-75. Additionally, this Court subsequently held in an uninsured motorist case:

> The relationship between the insurer and the insured arises by contract, and under Mississippi law, one of the reciprocal legal duties between the insurer and the insured is that of good faith and fair dealing, a duty that exists in the performance of every contract under Mississippi law.

*Owen v. Universal Underwriters Ins. Co.*, 252 F. Supp. 2d 324, 328 (S.D. Miss. 2003). Therefore, the implied covenant of good faith and fair dealing does arise in the first party insurance context, even where the breach of the duty to defend is not at issue. As a result, Prime is not entitled to summary judgment with regard to the Bryants' claim for breach of the duty of

good faith and fair dealing.

**II. The Validity of the Appraisal**

The appraisal clause in the policy provides:

> If there is a disagreement on the value of the property or the amount of the loss, either of us may make written demand for an appraisal of the value of the property or the amount of the loss. In this event, each party has the option to either:
>     a. Select an independent, competent, and impartial appraiser, or
>     b. Use as their appraiser, the adjuster or other party they have retained initially to adjust the loss.
> The two appraisers will select an umpire. If they cannot agree on the selection of the umpire, either may request that a judge of a court having jurisdiction make the selection. The appraisers will state separately the value of the property or amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the value of the property or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser, bear [sic] the other expenses of the appraisal and umpire equally. If there is an appraisal, we still retain our right to deny the claim.

(Ex. 1 to Def.'s Mot. at 13).

**A. The Appraisers' Failure to Appoint an Umpire**

The Bryants assert that the appraisal was invalid because the appraisers agreed that they did not need to appoint an umpire to assist them in the appraisal. In support of this assertion, they rely on *Providence-Washington Insurance Company v. Kennington*, 71 So. 378 (Miss. 1916). In *Kennington*, the parties appointed appraisers but the appraisal was not successful because the appraisers could not agree on the selection of an umpire or the measure of damages. *Kennington*, 71 So. at 379-80. The Mississippi Supreme Court held that an insured was not prevented from filing a lawsuit against his insurer where the appraisal fell through by no fault of the insured. *Id.* at 80. Thus, the *Kennington* decision does not support the Bryants' assertion that

an appraisal is *per se* invalid where the appraisers agree not to appoint an umpire. In the present case, the appraisers agreed that they would attempt to resolve the claim without the assistance of an umpire and would only hire an umpire if they could not agree. There is no indication that the Bryants' appraiser was terminated before the appraisers agreed that no umpire was necessary. Furthermore, the appraisal clause provides that only two persons must agree on the appraisal award and that: "If [the appraisers] fail to agree, they will submit their differences to the umpire." (Ex. 1 to Def.'s Mot. at 13). Therefore, the plain language of the policy contemplates that no umpire must be consulted unless the appraisers disagree on the amount of the loss. As a result, the lack of an umpire in the present case did not invalidate any alleged appraisal award.

**B. The Appraisers' Determination as to Causation**

The Bryants also allege that the appraisal was invalid because the appraisers improperly considered the cause and scope of the damage to their home. In support of this argument, the Bryants rely on *Munn v. National Fire Insurance Co. of Hartford*, 115 So. 2d 54 (Miss. 1959). In *Munn*, the Court held that a chancellor erred by relying on the appraisers' determination that damage to the walls of the insured's home was not caused by a windstorm, because the appraisal clause in the policy did not give the appraisers the authority to determine the cause of the damage. *Munn*, 115 So. 2d at 651. The appraisal clause provided: "Appraisers shall then appraise the loss, stating separately actual cash value and loss to each item." *Id.* at 646. The Court explained: "If the appraisers have the power to look at the property and determine the cause of the damage, in addition to the extent thereof, they possess a power to arbitrarily say whether the insurance company is liable." *Id.* at 649.

Similarly, in *Jefferson Davis County School District v. RSUI Indemnity Company*, this

Court held: "It is clear that under Mississippi law that the purpose of an appraisal is not to determine the cause of loss or coverage under an insurance policy; rather it is "limited to the function of determining the money value of the property" at issue. *Jefferson Davis County Sch. Dist. v. RSUI Indem. Co.*, 2:08cv190-KS-MTP, 2009 WL 367688 (S.D. Miss. Feb. 11, 2009). Nevertheless, Prime alleges that this Court held that an appraisal award was not invalid even where the appraisers determined the cause of the damage in *Children's Imagination Station v. Prime Insurance Syndicate, Inc.*, No. 1:07cv1000, 2008 WL 724049 (S.D. Miss. Mar 14, 2008). However, this Court specifically stated in the *Children's Imagination Station* case that Prime did not assert that the appraisers acted outside their authority, and thus, that issue was not before the Court. *Children's Imagination Station*, 2008 WL 724049 at *3.

In the present case, Prime's adjuster, Leonard Quick, testified that he determined the cause of the damage to the Bryants' home during the appraisal process. (Ex. 27 to Pl.'s Resp. at 32-33). The Bryants allege that certain damage to their home was not included in the appraisal award. As a result, the Court finds that a genuine issue of material fact exists regarding whether the appraisers acted outside their authority while conducting the appraisal and thus whether the alleged appraisal award is invalid.

**C. The Bryants' Attempt to Fire their Appraiser**

In the alternative, the Bryants assert that the alleged appraisal award was invalid, because Ronnie Bryant fired their appraiser before the appraisers reached an agreement. However, Prime contends that the appraisal award was made just before Bryant fired the appraiser. The Court has reviewed the claim notes and the sequence of the events in this case and has determined that a genuine issue of material fact exists regarding whether Bryant fired the appraiser before or after

the alleged appraisal award was made. Specifically, Bryant informed Prime that he was going to fire his appraiser on the same day that Quick sent a letter to Prime stating that an agreement had been reached. Additionally, Prime's conduct after it was informed that Bryant was firing his appraiser indicates that its representative believed that the alleged appraisal award was invalid. Specifically, Prime made two settlement offers to Bryant after the date that it now claims the appraisal award was made. Furthermore, Prime sent checks to Bryant after that date that exceeded the amount of the appraisal award and stated: "These [checks] are not intended to be a full and final settlement of claims, however they do represent what Prime feels is the full value of your claim. If you feel you are still owed additional funds I would be happy to discuss any issue you have." (Ex. 24 to Pls.' Resp.) Therefore, even Prime's conduct supports the Bryants' contention that the Bryants' appraiser was terminated before the appraisers agreed on an award. As a result, a jury must determine whether the appraisal award is valid.

### III. Bad Faith

The issue of whether an insured should recover punitive damages for an insurer's bad faith should not be submitted to a jury unless the trial court determines that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 634 (¶104) (Miss. 2007). An "arguable reason" is defined as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1096 (Miss. 1996) (quoting *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)). "Where an insurance

carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay." *Merrill*, 978 So. 2d at 634 (¶106). "[W]here the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon his claim for punitive damages if reasonable minds could differ as to the legitimacy of the carrier's reason." *Id.*

"[P]unitive damages are not mandated by the absence of an 'arguable reason' . . . because the denial of the claim could be the result of honest mistake or oversight– ordinary and simple negligence." *Caldwell*, 686 So. 2d at 1098 (quoting *State Farm Fire & Cas. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985)). Generally, "the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Tutor v. Ranger*, 804 F.2d 1395, 1399 (5th Cir. 1986).

The Bryants allege that Prime acted in bad faith by conditioning its initial $27,790.58 payment on a full and final release of all property damage claims. Additionally, the Bryants assert that Prime acted in bad faith by failing to timely investigate their contents claim.

The Court finds that Prime has submitted an arguable reason for its decision not to pay for any damage to the contents until after the appraisal. The Claim Notes indicate that Bryant complained about not being paid for damage to his personal property in December of 2005, and he was told that he must submit a proof of loss. There is no evidence in the record that Bryant submitted a proof of loss until after he hired a public adjuster. Additionally, it appears that the parties disputed the amount of damage to the contents, and this dispute was not resolved until

after the alleged appraisal. The Bryants were eventually paid the policy limits for their contents. As a result, Prime had an arguable reason for the delay in paying for the damage to the Bryants' contents.

However, a genuine issue of material fact exists regarding whether Prime has submitted an arguable basis for placing the full and final settlement language on the initial check sent to the Bryants. Prime asserts that it was not required to submit a new check because Bryant did not tell Prime that the check should not have included the language, "full and final settlement." However, Bryant arguably gave Prime sufficient information in December of 2005 to notify Prime that it should send a new check without the settlement language, when he stated that the check was insufficient to cover his loss. Prime did not resolve this problem until April of 2006, when Bryant complained to the Mississippi Department of Insurance.

Nevertheless, even if Prime lacked an arguable basis for including the full and final settlement language on the check, the Court finds that Prime's conduct merely rises to the level of simple negligence, as there is no evidence that Prime committed a wilful or malicious wrong, or acted with gross and reckless disregard for the Bryants' rights. Therefore, Prime is entitled to summary judgment with regard to the Bryants' bad faith claim.

**IV. Whether this Case should be dismissed so that the appraisal can be completed:**

Finally, Prime asserts that if it is determined that the appraisal was invalid, this case should be dismissed so that the appraisal can be completed. The Mississippi Supreme Court has explained:

> The courts have generally held that it is the duty of both parties to an
> insurance contract which provides for a submission of appraisal, in case of
> loss, of the question of the amount of loss or damages suffered, to act in good

> faith and to make a fair effort to carry out such agreement and accomplish its
> object. And if an appraisal is a condition precedent to an action on the policy,
> and the failure to secure an award by an appraisal is due to the fault of the
> insured, the absence of such award is a bar to an action on the policy by him.

*Hartford Fire Ins. Co. v. Conner*, 79 So. 2d 236, 240 (Miss. 1955).

The Bryants assert that this lawsuit should not be dismissed, because Prime waived its right to complete the appraisal. In order to determine whether a waiver exists, a court must determine whether the party knowingly and intentionally relinquished a right. *Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 347 (5th Cir. 1978).

In the present case, Prime continued negotiations with the Bryants after it alleges an appraisal award was made, and it paid the Bryants an amount that exceeded the amount of the alleged appraisal award. A reasonable jury could determine that these actions by Prime constituted an intentional relinquishment of its right to an appraisal. As a result, a genuine issue of material fact exists regarding whether Prime waived its right to an appraisal, as well as its right to rely on the appraisal award.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [121] filed by the defendant, The Prime Insurance Syndicate, Inc. is **GRANTED** as to the Bryants' bad faith claim and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 13th day of April, 2009.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE