# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| RONNIE BRYANT and PATRICIA BRYANT | § § § § | PLAINTIFFS |
| v. | § | Civil Action No. 1:07CV1126-LG-RHW |
| THE PRIME INSURANCE SYNDICATE, INC. and JOHN DOES 1-10 | § § § § § | DEFENDANTS |

## ORDER CONFIRMING SUMMARY JUDGMENT IN FAVOR OF
## PRIME INSURANCE SYNDICATE AS TO PLAINTIFFS' BAD FAITH CLAIM

**THIS MATTER IS BEFORE THE COURT** for reconsideration of this Court's Order [191] granting summary judgment in favor of the defendant, The Prime Insurance Syndicate, Inc., as to the plaintiffs' bad faith claim. After granting a Motion for Reconsideration [202] filed by the plaintiffs, the Court permitted the parties to submit supplemental responses and evidence to the Court regarding whether genuine issues of material fact exist concerning the plaintiffs' bad faith claim. After a thorough review of the supplemental responses and exhibits and the pleadings previously submitted by the parties, the Court confirms that Prime is entitled to summary judgment regarding the plaintiffs' bad faith claim.

### DISCUSSION

A detailed discussion of the facts and procedural history of this case can be found in this Court's Memorandum Opinion and Order Granting in Part and Denying in Part Prime's Motion for Summary Judgment [191] and the Order Granting the plaintiffs' Motion for Reconsideration [202]. In the Memorandum Opinion and Order [191], this Court held that: (1) the duty of good faith and fair dealing is present in the first party insurance context; (2) the lack of an umpire

during the appraisal process did not invalidate any alleged appraisal award; (3) a genuine issue of material fact exists regarding whether the appraisers acted outside their authority by making determinations regarding causation; (4) a genuine issue of material fact exists regarding whether the plaintiffs fired their appraiser before the appraisal award was made; (5) a genuine issue of material fact exists regarding whether Prime had an arguable basis for placing "full and final settlement" language on the initial check sent to the Bryants; (6) Prime's conduct in placing the "full and final settlement" language on the check was only simple negligence, such that Prime was entitled to summary judgment regarding the plaintiffs' bad faith claim; and (7) a genuine issue of material fact exists regarding whether Prime waived its right to an appraisal and its right to rely on any appraisal award.

In their supplemental brief, the plaintiffs assert that deposition testimony given by Prime employees creates a genuine issue of material fact regarding whether Prime's conduct in placing the "full and final settlement" language on the check and its failure to reissue the check without that language constituted a willful and malicious wrong or gross and reckless disregard for the plaintiffs' rights. The plaintiffs also argue for the first time that Prime's failure to include general contractor's overhead, profit, and sales tax in the initial payment and its failure to inform the plaintiffs that they were entitled to those amounts constituted bad faith. Finally, the plaintiffs argue that "Prime's undue delay in improperly invoking an appraisal process, allowing its appraiser to make coverage decisions, and misrepresenting to Plaintiffs the amount their appraiser was willing to accept in settlement" constituted bad faith. (Pls.' Supp. Resp. at 2).

The issue of whether an insured should recover punitive damages for an insurer's bad faith should not be submitted to a jury unless the trial court determines that there are jury issues

with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 634 (¶104) (Miss. 2007). "[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Tutor v. Ranger*, 804 F.2d 1395, 1399 (5th Cir. 1986). "Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme." *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (¶20) (Miss. 1999) (citing *Wirtz v. Switzer*, 586 So. 2d 775, 783 (Miss. 1991)). Thus, Miss. Code Ann. §11-1-65 provides that a claimant must prove by **clear and convincing evidence** that the defendant acted with actual malice, gross negligence that evidences a willful, wanton, or reckless disregard for the rights of others in order to recover punitive damages.

**A. The Placement of the "Full and Final Settlement" Language on the Check and Failure to Reissue the Check:**

This Court has previously held that Prime did not have an arguable basis for placing the "Full and Final Settlement" language on the initial check or for failing to send a new check to the plaintiffs that did not contain that language. However, this Court held that Prime's conduct merely constituted simple negligence, and thus, punitive damages were not warranted.

The plaintiffs argue that the deposition testimony of Prime's employees demonstrates that this Court's determination that Prime's conduct was simple negligence was incorrect. However, the Court finds that the deposition testimony actually supports this Court's determination. For

example, Doug Murray gave the following testimony when he was asked why the check was endorsed "full and final settlement:"

> It probably shouldn't have been done that way. Again, if you look at our background, we are mainly a liability carrier handling third-party liability claims. And even when we, you know, pay our [attorneys'] invoices, it says full and final settlement of invoice. I'm not going to say it was kind of a clerical error or something to that effect, but there was never any intent to enforce that full and final language on any check that got sent out to any of our policyholders at any time.

(Ex. 1 to Pls.' Supp. Resp. at 52). Murray also explained:

> It was done more out of habit – as a liability carrier dealing with third-party claims, an indemnity check typically involves a release of all claims, along with full and final language on the check. To my knowledge, there was nobody that said this is how we're going to do it. However, it did get done.
>
> Again, I'll just restate this, [sic] it certainly wasn't our intent to have them release any and all claims if they negotiated that check. As a matter of fact, all they had to do, you know, was call us, [sic] we'd assure them that they could pursue any other claims they want and to ignore that language. If they weren't comfortable with that, we could put that in writing to them or we could reissue them a check.

(*Id.* at 68). Murray's explanation was reiterated by another Prime employee, David McBride. (*See* Ex. 2 to Pls.' Resp. at 129).

The testimony of these employees indicates that checks were issued with the restrictive language out of habit, due to the fact that Prime primarily handled third-party liability claims. The testimony also indicates that Prime did not intend for its first-party insureds to rely on this language and did not intend to enforce the language with these insureds. There is no evidence before the Court that Prime acted with malice or with gross or reckless disregard for the plaintiffs' rights when it issued the check.

**B. The Failure to Include Overhead, Profit, and Sales Tax in the Initial Check and Failure to Inform the Plaintiffs Regarding the Potential Recovery of these Expenses:**

The plaintiffs also argue that Prime acted in bad faith when it failed to include a contractor's overhead, profit, and sales tax in the initial check. First, there is no admissible evidence before the Court that Prime instructed any of its adjusters to exclude overhead, profit, and sales tax; rather the plaintiffs rely solely on inadmissible hearsay. Additionally, neither the Court nor the parties have located any decision in which the Mississippi courts have addressed the issue of whether an insured is entitled to these costs, particularly where, as here, the insureds have not attempted to repair or replace their home. The caselaw cited by the parties demonstrates that there is a split of authority among other jurisdictions on this issue. *See, e.g., Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305-06 (11th Cir. 2008); *but see, Holden v. Farmers Ins. Co. of Washington*, 175 P.3d 601, 604 (Wash. Ct. App. 2008). Finally, it should be pointed out that the plaintiffs concede that Prime eventually paid these costs, despite the fact that the plaintiffs have not repaired their home. Prime simply failed to include these costs in the initial check that was sent to the plaintiffs. Once again, there is no evidence before the Court that Prime acted with malice or with gross or reckless disregard for the plaintiffs' rights by failing to include these costs.

**C. The Appraisal Process**

The plaintiffs argue that "Prime's undue delay in improperly invoking an appraisal process, allowing its appraiser to make coverage decisions, and misrepresenting to Plaintiffs the amount their appraiser was willing to accept in settlement" constituted bad faith. (Pls.' Supp. Resp. at 2). The plaintiffs also assert that Prime acted in bad faith, because Prime's appraiser and

the plaintiffs' appraiser agreed that it would not be necessary to hire an umpire until after they attempted to reach an agreement regarding the amount of damage to the home. The Court has previously held that the appraisers' decision not to hire an umpire was not improper and did not invalidate the appraisal process. Therefore, the decision not to hire an umpire clearly does not warrant the imposition of punitive damages.

The plaintiffs correctly note that Prime waited approximately one year before invoking the appraisal process. However, the plaintiffs also had the right to demand an appraisal under the policy but failed to do so. (Ex. 1 to Prime's Mot. at 13). Additionally, the plaintiffs did not provide Prime with any contractors' estimates or other support for their claim that the initial payment was insufficient until May of 2006, despite Prime's request. (Ex. 4 to Pls.' Supp. Resp.) After receiving the plaintiffs' adjuster's report, Prime requested a detailed actual cash value assessment, but one was not provided until August of 2006. (*Id.*) Therefore, the delay does not tend to show that Prime acted with malice or with reckless disregard for the plaintiffs' rights; rather during this period of time, Prime was investigating the plaintiffs' claim and attempting to obtain more information regarding the claim.

The plaintiffs also assert that Prime acted in bad faith by allowing its appraiser to improperly consider coverage issues during the appraisal process. This Court has held that a genuine issue of material fact exists regarding whether the appraisers improperly considered coverage issues. Furthermore, there is no evidence that Prime knew its appraiser considered coverage issues or authorized its appraiser to make coverage determinations. Therefore, punitive damages are not warranted.

Finally, the plaintiffs contend that Doug Murray "attempted to 'settle' the claim with

Plaintiffs by offering an amount approximately $9,000 less than the amount Prime's appraiser assessed as damages and $11,000 less than the last figure Plaintiffs' appraiser had asked for in settlement." (Pls.' Supp. Resp. at 10). However, the claims note regarding the conversation with Murray actually states:

> Insured called and was upset at the time this is taking to settle the claim . I reviewed the file with Davie. We are in the appraisal process. He told me we would be hearing from some one other than his public adjuster. I did tell him it looked as if we have agreed to total damages on his home around 45000 and would be making another payment to him for about 18000. I told him we didn't have the content number but his public adjuster was asking for 15,000. It sounded to me as if the insured was going to fire the public adjuster and hire an attorney. I ask [sic] him to have the other person contact me or David and he hung up on me.

(Ex. 4 to Pls.' Supp. Resp.) This claims note does not discuss a settlement offer, but a description of how it appeared that the appraisal process was proceeding based on Murray's review of the file. Murray testified that he told Ronnie Bryant that he did not have the actual appraisal report yet, but those figures were what he understood the numbers were going to be. (Ex. 1 to Pls.' Supp. Resp. at 111). The plaintiffs have not submitted any conflicting testimony regarding an alleged settlement offer. Additionally, there is no evidence that the plaintiffs relied on Murray's figures or suffered damages as a result of the allegedly incorrect figures. As a result, punitive damages are not warranted.

## Conclusion

The plaintiffs in the present case have not provided the Court with any evidence that Prime acted with malice or reckless disregard for their rights. As a result, this Court confirms its previous Memorandum Opinion and Order granting summary judgment in favor of Prime as to the plaintiffs' bad faith claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Prime is entitled to summary judgment with regard to the plaintiffs' bad faith claim.

**SO ORDERED AND ADJUDGED** this the 25th day of June, 2009.

                                                s/ *Louis Guirola, Jr.*
                                                LOUIS GUIROLA, JR.
                                                UNITED STATES DISTRICT JUDGE