IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RONNIE BRYANT AND PATRICIA BRYANT                                PLAINTIFFS

VERSUS                                         CIVIL ACTION NO. 1:07-CV-01126-LG-RHW

THE PRIME INSURANCE SYNDICATE, INC. and                          DEFENDANTS
JOHN DOES 1 - 10

_____

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR RECONSIDERATION OF SUMMARY JUDGMENT DENYING BAD FAITH PUNITIVE DAMAGES**
_____

Plaintiffs move for a directed verdict or judgment as a matter of law, pursuant to Fed. R. Civ. Proc. 50(a), and for relief from the Court's Order granting Summary Judgment for Prime and denying bad faith punitive damages, pursuant to Fed. R. Civ. Proc. 60(b)(6), as follows, to-wit:

Fed. R. Civ. Proc. 50(a)(1) provides that:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
(A) resolve the issue against the party; and
(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A motion for Judgment as a Matter of Law should be granted if "the facts and inferences point so strongly in favor of the motion, that a rational jury could not arrive at a contrary verdict." Waymire v. Harris County, 86 F.3d 424, 427 (5th Cir. 1996) (quoting London v. MAC Corp. of Am., 44 F.3d 316, 318 (5th Cir. 1995)).  See also, Hagan v. Echostar Satellite, L.L.C., 529 F.3d

617( 5th Cir. 2008).

Plaintiffs contend that the evidence, viewed even in the light most favorable for the Defendants, supports no other rational conclusion other than that the Defendant, Prime Insurance Syndicate, breached its contract with the Plaintiffs by failing to deal with them fairly and in good faith. Under any fact scenario presented, Prime lacks an arguable or justifiable reason for sending the Plaintiffs, not *only* a check marked "Full and Final Settlement", but *also* a Release, a Proof of Loss, and written instructions to execute those forms *if* the Plaintiffs agree with the amount of loss.

Defendants have argued that, although admittedly nothing in their policy or Mississippi law allows an insurance company to refuse to pay sums that are owed on a first-party claim, and based on their own estimates, their Full and Final Settlement endorsement on the initial check tendering insurance proceeds to the Plaintiffs was merely through habit or a clerical error, since the majority of their claims are third-party liability claims. This matter has been hotly contested at trial, and the facts refuting that defense of excusable neglect will be addressed later. However, the Court recently posed the question to defense counsel inquiring what would have happened had the Bryants cashed their check. It has generally been suggested by the defendants that the effect of endorsing their check "Full and Final Settlement" was unknown and varied from state to state. However, based on the Mississippi authorities outlined below, and a review of the documents enclosed with the Bryant's check, it becomes clear that, had the Bryants cashed their check, their claims would have been discharged by way of accord and satisfaction. Further, Prime's conduct in endorsing the check was clearly pre-meditated with the intent of tricking the Plaintiffs into a settlement.

Although Mississippi law would not prohibit Plaintiffs from bringing a supplemental claim if they had cashed the check *and* executed a Proof of Loss form *agreeing* to the amount of loss, had the Plaintiffs cashed their check *without* executing the Proof of Loss and Release, any supplemental claim would have been forever barred by the doctrine of accord and satisfaction. This is exactly what Prime hoped the Bryants would do.

Generally, under the common law doctrine of accord and satisfaction, and pursuant to MCA §75-3-311(a) and (b), if a debtor tenders a check endorsed as full and final settlement of a claim which was *unliquidated* or the subject of a bona fide *dispute*, and the creditor cashes the check, the claim is discharged. However, if the claim is not disputed at the time and the creditor cashes the check, no claim is discharged because there was no dispute over amount or existence of the debt at the time, thus no consideration flows from the debtor to the creditor to support an accord and satisfaction.

Specifically, MCA §75-3-311 states as follows:

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed

debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.

(2) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (1)(i).

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Further, although there are certain provisions within the U.C.C. that would allow a creditor to endorse a full and final settlement check with words like "without prejudice" or "under protest" see MCA §75-1-207, an insurance contract is not a contract for the sale of goods and is not covered by the U.C.C.  *See* MCA. § 75-2-102; *see also* Allstate Indemnity Company v. Bates, 2007 U.S. Dist. LEXIS 84195 (citing Bartley v. National Union Fire Ins. Co., 824 F. Supp. 624, 636 (N.D. Tex. 1992) (finding that insurance policies do not fit within definition of "goods" contemplated in U.C.C.).

Unfortunately, most of the focus of this litigation and the earlier Motion for Summary Judgment hinged on the actual endorsement of "Full and Final Settlement" on the *check itself*. Had the check along with nothing more than a written estimate been forwarded to the Bryants with a truly "clerical error" endorsing the check "Full and Final Settlement", no claims of the Bryants would have been discharged by accord and satisfaction because the debt was undisputed in amount.  However, Prime did more than this.  Prime also enclosed with their check a letter stating that, "*If, after your review of the independent adjuster's estimate . . ., you agree with our*

*calculation of your covered loss, please sign and have notarized the Proof(s) of Loss and General Release of All Property Damage Claims. Then, please mail or fax the signed and notarized Proof(s) of Loss and General Release of All Property Damage Claims to: . . .*" [Emphasis added.] See P-19, the check, and P-20 the letter and other documents accompanying the check.

The accompanying Proof of Loss lists the ACV of the damage to the dwelling structure as indicated in Prime's Dwelling Adjustment Worksheet (P-20), which was approximately $27,000.00. Further, the Proof of Loss states that, "The listed item(s) constitutes a full and complete list of all of the damaged/destroyed property associated with this loss. It also states that, " . . .the undersigned acknowledges that before any payment is made under the terms of the Policy, the insurer may require the insured party to sign a General Release of All Property Damage Claims." The Proof of Loss goes on to state that "The undersigned understands that by investigating your claim, paying you any monies (including initial payments that, after further investigation, Prime was not required to make), or taking any other action regarding your insurance claim, that Prime is not acknowledging your claim is covered. Moreover, Prime is not waiving any of its rights or coverage defenses which it may have under the policy, by law, or otherwise. These rights an defenses are hereby expressly reserved."

The "General Release of All Property Damage Claims" states that Prime and Claims Direct Access are released ". . . from any and all property damage claims . . .growing out of or related to any and all known or unknown, foreseen or unforeseen property damage and the consequences thereof resulting from the accident or event which occurred on or about August 29, 2005." It makes no mention whatsoever of the release of a third-party from any liability.

By instructing the insureds to execute a Proof of Loss *agreeing* to the amount of damage and signing a Release if they agree with the amount, the insurance company automatically converted an *undisputed* amount owed into an *unliquidated or disputed* claim whenever an insured failed to sign and return their Proof of Loss and Release agreeing to the amount of damages. By enclosing with the check, a letter asking the insureds to sign the Proof of Loss if they agree with the amount stated therein and a Release, Prime now could argue under Mississippi law that, if their insured did **not** sign the Proof of Loss and Release, then the insured **did not agree** with the amount of damages. Thus, if the insured cashes a check endorsed "Full and Final Settlement" they have cashed a check with such an endorsement on a *disputed* debt. Thus, under Mississippi law, as outlined above, there has been an accord and satisfaction, and the insurance company's obligations are fully discharged. Further, the insured could not merely mark through the endorsement or cash the check with a reservation of rights, because this contract is not governed by U.C.C. provisions which would allow them to cash the check with a reservation of rights.

Now, knowing the applicable law, and what would have happened *had* the Bryants cashed their check, an examination of the facts of this case makes it even more clear that Prime's actions were intentionally directed towards an unfair attempt to obtain full and final settlements from their insureds, including the Bryants, upon tendering their initial payment under the policy. Unfortunately, the focus on the check and its endorsement in this case has caused a situation where it has been difficult to see the forest for the trees. Prime has argued that it was habit or clerical error that caused a computer to print "Full and Final Settlement" on all of its Hurricane Katrina checks. However, this allegation is completely and totally refuted by the fact that Prime

not only sent a check with that endorsement, Prime also carefully crafted a two-page letter to go along with the check, that clearly instructed the insureds to sign the Proof of Loss and Release if they <u>agreed</u> with the amount of damages alleged by Prime. The letter accompanying the endorsed check is not a form letter used for third-party injury claims. It is specifically tailored to address a homeowner's property damage claim under a first-party insured scenario and it specifically asks the insured to execute a Proof of Loss agreeing to a specific amount of damages to a *dwelling*.

Additionally, the Proof of Loss is a form distinctly crafted for first-party insurance scenarios, which also is carefully drafted to establish an *agreement* as to the amount of *Property Loss and Dwelling damages*. [Emphasis added.] Again, no mention of any injury claims or liability claims, or release of a third party, etc. The Release is also carefully drafted to include a release of "any and all {claims for} breaches or any provisions of the *policy* . . .". Further, there is no third-party being released in this document, only Prime and Claims Direct Access. Thus, it can be clearly seen that, even if Prime's suggestion that it endorsed the check itself with "Full and Final Settlement" out of habit or due to a clerical error were believable, there can be no doubt that the *forms accompanying their check,* were not drafted by clerical error or forwarded out of habit, as they are carefully drafted to address a first-party insured claim under a dwelling insurance policy, as opposed to a third-party insurance claim. Additionally, these carefully drafted forms are the very documents that put the amount of Prime's obligation to its insured in dispute, *unless* the insured signs a Release.

Finally, during the testimony of Doug Murray, Mr. Murray alleged that the reason the check was endorsed "Full and Final Settlement" was because the checks were generated by computer and there was a default button on the computer that was used to issue checks in third-

party insurance claims. So, the Full and Final Settlement appeared on the Bryants check due to the computer default setting. However, another look at the check itself clearly refutes Mr. Murray's suggestion that a default button for endorsement of third-party insurance checks was used to print the endorsement on this check. Mr. Murray should have taken a closer look at the language of the endorsement itself before he made those allegations, because the exact language on the endorsement is "Full and Final Settlement of any and all dwelling claims arising on 8/29/05." Perhaps the insurance company might have had a default button on the computer that used a generic "Full and Final Settlement of all claims" endorsement for both third-party and first-party insurance claims. However, the specific language itself which was used *here*, purports to settle *ALL DWELLING CLAIMS ARISING ON 8/29/05* The language of the endorsement itself clearly refutes any allegation that the endorsement was the same as those used in third-party liability claims, as there would certainly be no mention of a "dwelling claim arising on 8/29/05" in the settlement and payment to a third party slip and fall claim at Wal-mart or some other type of third-party liability claim. Thus, Prime's allegation that the endorsement was printed on the check out of habit or clerical error is clearly refuted by the language of the endorsement itself and the carefully drafted forms accompanying the check which specifically addressed homeowners' dwelling claims.

  Additionally, the letter, Proof of Loss and Release, combined with the "Full and Final Settlement" check converted what should have been an undisputed tender of insurance funds owed into a disputed debt, such that cashing the check would have resulted in a discharge of their obligations to the insured under the policy by way of an accord and satisfaction. The carefully drafted terms of these documents are a clear indication of Prime's **intent,** and refute the

suggestion that the endorsement was done out of habit or by way of clerical error. No rational juror could possibly conclude that the endorsement and accompanying paperwork were sent to the Plaintiffs out of habit or as a mere clerical error. Thus, Plaintiffs move for a directed verdict or for Judgment as a Matter of Law, finding that Prime lacked any arguable basis for endorsing the check "Full and Final Settlement of any and all dwelling claims arising on or about 8/29/05" and that Prime therefore breached its obligation to deal fairly and in good faith with the Plaintiffs, a duty inherent in all contracts under Mississippi law.

      Finally, Fed. R. Civ. Proc. 60(b)(6) allows for relief from a Judgment or Order of the Court based on any reason that justifies relief. Based on the reasons set forth above, Plaintiff would contend that, after hearing all of Prime's arguments allegedly excusing its endorsement of "Full and Final Settlement of any and all dwelling claims arising on or about 8/29/05" on Plaintiffs' check, there can be no dispute that Prime lacked an arguable basis for its actions. Further, because the evidence so clearly points to a **clear intent** on behalf of Prime to cause their insureds to *settle* their claims upon cashing their initial checks for sums undisputedly owed under the policy, Plaintiffs would request that the Court reconsider its Order granting Prime's Motion for Summary Judgment as to bad faith punitive damages.

      Respectfully submitted, this, the 19th day of January, 2010.

> By: /S/ Virginia L. LoCoco
> **VIRGINIA L. LOCOCO, MBN # 8483**
> **IAN L. BAKER, MBN # # 102272**
> **LOCOCO & LOCOCO, P. A.**
> **10243 CENTRAL AVENUE**
> **POST OFFICE BOX 6014**
> **D'IBERVILLE, MISSISSIPPI 39540-6014**
> **(228) 392-3799 TELEPHONE**
> **(228) 392-3890 FACSIMILE**

## CERTIFICATE OF SERVICE

I, Virginia L. LoCoco, attorney for RONNIE BRYANT AND PATRICIA BRYANT, do hereby certify I have electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to:

> Mr. Justin L. Matheny, Esquire
> Mr. Ross F. Bass, Jr., Esquire
> Mr. James W. Shelson, Esquire
> PHELPS DUNBAR, L.L.P.
> 111 East Capitol Street, Suite 600
> Post Office Box 23066
> Jackson, Mississippi 39225-3066

SO CERTIFIED, this the 19th day of January, 2010.

/S/ Virginia L. LoCoco
**VIRGINIA L. LOCOCO, MSB # 8483**
**LOCOCO & LOCOCO, P. A.**
**10243 CENTRAL AVENUE**
**POST OFFICE BOX 6014**
**D'IBERVILLE, MISSISSIPPI 39540-6014**
**(228) 392-3799 TELEPHONE**
**(228) 392-3890 FACSIMILE**