**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RONNIE BRYANT and** | § | |
| **PATRICIA BRYANT** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil Action No. 1:07cv1126-LG-RHW** |
| | § | |
| **THE PRIME INSURANCE** | § | |
| **SYNDICATE, INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**
**OR IN THE ALTERNATIVE FOR A NEW TRIAL**

**BEFORE THE COURT** is the Motion for Judgment as a Matter of Law or in the

Alternative for a New Trial and for Reconsideration of Summary Judgment Denying Bad Faith

Punitive Damages [248, 249] filed by the plaintiffs, Ronnie and Patricia Bryant. The defendant,

Prime Insurance Syndicate, filed a response, but the Bryants did not file a reply. Upon reviewing

the submissions of the parties and the applicable law, the Court finds that the jury had a legally

sufficient evidentiary basis to find in favor of Prime and that the Bryants are not entitled to a new

trial or reconsideration of their punitive damages claim. As a result, the Bryants' Motion is

denied.

### DISCUSSION

This lawsuit arose out of an insurance dispute concerning damage caused by Hurricane

Katrina. The Bryants claim that their insurer, Prime, improperly delayed payment for damages to

their home. However, Prime argued that any delay on its part did not cause the Bryants' damages

because the Bryants' mortgage company, Homecomings Financial, LLC, refused to release any

funds to the Bryants until certain conditions were met. Prime also argued that it had more than

fully compensated the Bryants for the loss to their home, because it had paid an amount that

exceeded the amount of damage agreed to by the parties' appraisers.  Following a six-day trial, the jury found that the Bryants did not demonstrate all of the necessary elements of their breach of contract claim by a preponderance of the evidence.  As a result, Judgment was granted in favor of Prime on January 20, 2010.

The Bryants filed the present motion on February 17, 2010.  They argue that they are entitled to either judgment as a matter of law or a new trial, as well as reconsideration of the dismissal of their bad faith punitive damages claim on summary judgment.

## I.  MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50

"A motion for judgment as a matter of law should be granted if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.'" *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007).  A court may only grant such a motion when "the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict."  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 391 (5th Cir. 2000)).  The court views all evidence and draws all reasonable inferences in the light most favorable to the jury's verdict.  *Pineda*, 360 F.3d at 486.

The Bryants argue that Prime's failure to include general contractor overhead, profit, and sales tax in its initial payment to the Bryants constituted a breach of contract, even when the evidence is viewed in the light most favorable to Prime.  They also argue that the home was a total loss based on their engineer's opinion, and therefore, Prime's failure to pay the market value of the home constituted a breach of contract.

"In any suit for a breach of contract, the plaintiff has the burden of proving by a

preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that he has been thereby damaged monetarily." *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992). However, there are rational conclusions that the jury could have made that would support a finding that the Bryants did not prove all of the elements of their breach of contract claim.

With regard to overhead, profit and sales tax, the jury was instructed: "If you find that it was reasonably likely that the Bryants would have needed to utilize the services of a general contractor in order to repair their property, then overhead, profit, and sales tax should be included in the actual cash value calculation. The Bryants would be entitled to these expenses, regardless of whether they actually repaired the property or hired a general contractor." *See, e.g., Mee v. Safeco Ins. Co.*, 908 A.2d 344, 350 (Penn. 2006). It should be noted that the parties did not dispute that Prime paid these costs after the appraisal. The jury reasonably could have determined that any delay in providing these costs did not cause damages to the Bryants, since Ronnie Bryant intended to perform the repairs himself. Ronnie testified that he can do just about anything he wants to do when it comes to construction. (T. at 193). He explained that he had worked in construction his entire life and had gutted and completely remodeled his house prior to Katrina. (*Id.*) Therefore, even if the Bryants were entitled to these costs, it is unlikely that they ever would have incurred these costs. Thus, some delay in the payment of these costs did not cause them damages.

In addition, the jury may have determined that the Bryants were bound by the appraisal award pursuant to the insurance policy. Prime's appraiser, Leonard Quick, testified that he and the Bryants' appraiser, Michael Graham, reached an agreement concerning the damage to the

Bryants' dwelling and sheds on December 7, 2006, and an agreement concerning the damage to the Bryants' personal property on February 6, 2007. (T. at 690-93). His report regarding the appraisal, which included payment for general contractor's overhead and profit was finalized on February 22, 2007. (*Id.* at 699). Ronnie Bryant testified that he fired Michael Graham "[b]y early, mid-January" of 2007, and therefore, the Bryants claim that they were not bound by the appraisal award. (*Id.* at 288). However, on cross-examination, Ronnie clarified that he fired Graham between January and March of 2007. (*Id.* at 356). Furthermore, Prime's claims log contains a note that Ronnie called on February 22, 2007, and stated that he was going to fire Graham. (Ex. D-5). After being shown the claims log, Ronnie at first stated that he fired Graham between January and February of 2007, but he eventually admitted that he did not remember. (T. at 359-60). As a result, the jury rationally could have determined that Bryant terminated Graham after the appraisal award was decided. It is undisputed that Prime paid the Bryants an amount that exceeded the appraisal award, and thus, the jury could have determined that the Bryants did not have a breach of contract claim against Prime.

In addition, the jury may have determined that any delay on the part of Prime did not cause any damages to the Bryants because there was evidence that their mortgage company would not have released the insurance funds in a timely manner. Ronnie testified that it took a while for the mortgage company to disburse insurance funds to him, because they required him to first submit receipts for repairs that he had done. (T. at 303-04, 306). He explained that this impeded his attempts to perform repairs and caused damage to materials that he bought in an attempt to build a garage apartment for the family to live in. (*Id.*) Patricia Bryant also confirmed that Homecomings refused to apply the insurance proceeds to their mortgage, despite repeated

requests. (*Id.* at 636, 639-40). She testified that the mortgage company required them to spend their own money to make repairs before disbursing the insurance money. (*Id.* at 641). There was also evidence and testimony at trial that demonstrated that the Bryants sued Homecomings three times in an attempt to receive payment and avoid foreclosure. (*Id.* at 366-374 ; Ex. D-44, D-46). Furthermore, portions of a deposition of a banking expert, Don Coker, were read into evidence. (Ex. D-76). He opined that Homecomings wrongfully withheld the insurance proceeds from the Bryants, by refusing to either apply the funds to the mortgage or release the funds to the Bryants to fund the repairs. Based on this testimony and evidence, the jury could have held that the Bryants' damages were caused by Homecomings rather than any alleged breach of contract by Prime. Therefore, the Court finds that the jury's verdict was supported by substantial evidence.

It should be noted that the Bryants also argue that Prime's conduct in placing the language, "full and final settlement" on the initial payment to the Bryants constituted a tortious breach of contract. The Court will not consider these arguments because a plaintiff must prove that the defendant breached the contract in order to recover for a tortious breach of contract. *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 270 (5th Cir. 2008) (noting that when an insurer breaches its contract with its insured and commits an independent tort, extracontractual damages may be recovered); *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992) (requiring an independent tort and a breach of contract). This Court held in its Memorandum Opinion and Order [191] concerning Prime's Motion for Summary Judgment that a genuine issue of material fact existed regarding whether Prime had an arguable basis for including the "full and final settlement" language on the initial check sent to the Bryants. But, that was only one element of the tortious breach of contract claim. Since the jury determined that the Bryants did

not prove their breach of contract claim by a preponderance of the evidence, it would have been improper for the jury to consider whether there was a tortious breach of contract.

## II.  MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(a)(1)

Rule 59 of the Federal Rules of Civil Procedure provides: "The court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*,773 F.2d 610, 612 (5th Cir. 1985).  When a party seeks a new trial by alleging that the verdict was against the weight of the evidence, the court should weigh all of the evidence and need not view it in the light most favorable to the nonmoving party. *Smith*, 773 F.2d at 613.  "A motion for new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004).

As this Court has previously explained, the jury's verdict was supported by substantial evidence.  Thus, the verdict certainly was not against the great weight of the evidence.  *See Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008).  As a result, the Court finds that the Motion for a New Trial should be denied.

## III.  MOTION FOR RECONSIDERATION PURSUANT TO RULE 60(b)

The Bryants seek reconsideration of this Court's dismissal of their bad faith punitive damages claim pursuant to Rule 60(b)(6), which provides that the Court may relieve a party from a judgment for "any other reason that justifies relief."  The Court finds that the Bryants' request

for reconsideration must be denied.  Once again, substantial evidence supported the jury's determination that the Bryants did not prove their breach of contract claim, which also requires dismissal of their tortious breach of contract claim.  Furthermore, there is no evidence that Prime committed a wilful or malicious wrong, or acted with gross and reckless disregard for the Bryants' rights.  Finally, "[t]he existence of actual damages is, in Mississippi, a necessary prerequisite to the jury's right to consider and assess punitive damages."  *Harbin v. Jennings*, 734 So. 2d 269, 274-75 (Miss. Ct. App. 1999); *see also* Miss. Code Ann. § 11-1-65.  Because the Bryants were not entitled to compensatory damages, they also were not entitled to punitive damages.

        **IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Judgment as a Matter of Law or in the Alternative for a New Trial and for Reconsideration of Summary Judgment Denying Bad Faith Punitive Damages [248, 249] filed by the plaintiffs, Ronnie and Patricia Bryant, is **DENIED**.

        **SO ORDERED AND ADJUDGED** this the 27th day of April, 2010.


                                        s/ *Louis Guirola, Jr.*
                                        LOUIS GUIROLA, JR.
                                        UNITED STATES DISTRICT JUDGE